## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2019, 7:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jay M. Lee
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Garrick Twiford, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 31, 2019<br><br>Court of Appeals Case No.<br>18A-PC-1876<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Teresa L. Cataldo, Judge<br><br>Trial Court Cause Nos.<br>20D03-1605-PC-26<br>20D03-1004-FA-21 |

**Najam, Judge.**

[1] Garrick Twiford, Jr. appeals the post-conviction court's denial of his petition for post-conviction relief. Twiford raises two issues for our review, which we restate as follows:

1. Whether the post-conviction court erred when it concluded that Twiford was not denied the effective assistance of trial counsel.

2. Whether the court erred when it concluded that he was not denied the effective assistance of appellate counsel.

[2] We affirm.

## Facts and Procedural History

[3] From June to September 2009, Twiford lived with his sister and her husband and children, including then six-year-old B.B. On December 29, B.B.'s mother and step-father became concerned about B.B. after they had discovered that she was doing "inappropriate" things with her brother. Trial Tr. at 65. As a result of B.B.'s actions with her brother, B.B.'s mother told B.B. about the boundaries of the body, which B.B.'s mother called the "bubble." *Id*. At that point, B.B. told her mother and step-father that Twiford had "broke[n] her bubble." *Id*. at 52. B.B.'s parents called the police. The next day, police officers interviewed B.B. Based on the statements that B.B. had made to officers during her interview, the State charged Twiford with two counts of child molesting, as Class A felonies (Counts I and II), and one count of child molesting, as a Class C felony (Count III), for acts that had allegedly occurred between June 1 and September 30.

[4]    The trial court held a jury trial on March 19 and 20, 2012.  During the trial, the State called B.B. as a witness.  B.B. testified that Twiford had touched her "in the wrong spots," where she "go[es] potty."  *Id*. at 102.  B.B. further testified that Twiford touched her "private spot" with his hands in "wrong ways" and that it "hurt" her.  *Id*. at 104.  B.B. also testified that Twiford's "wee wee" had touched her private area.  *Id*. at 103.  She then testified that Twiford "tried to put his private part" in hers more than five times.  *Id*.

[5]    Additionally, B.B. testified that, on one occasion while Twiford lived with them, Twiford had carried her downstairs to the couch and "took [her] clothes off."  *Id*. at 105.  She then stated that Twiford had "tried to have S-E-X with [her]."  *Id*. at 106.  B.B. also testified that Twiford had taken her hand and "made [her] shake his private part."  *Id*. at 108.

[6]    B.B. also testified that, once, while in the bathroom, Twiford's "wee wee" touched "the hole part" of her bottom where she "go[es] P-O-O-P" and that it was "super uncomfortable."  *Id*. at 110.  She then testified that Twiford had put "[w]hite, clear stuff" into her "bottom."  *Id*. at 139.  B.B. testified that Twiford had touched her private part with his hand "like ten times," and that, in total, Twiford had touched her "[t]wenty times."  *Id*. at 108, 113.  During the State's direct examination of B.B., the State asked B.B. about the first time that Twiford had touched her inappropriately.  B.B. stated that, while they lived in a

trailer prior to moving to the house,[1] Twiford had made B.B. "suck on his private part." *Id*. at 116.

[7] Twiford did not object to B.B.'s testimony. After both parties had questioned B.B., the jury wrote down questions that they had for her. At that time, the court recessed in order to hear counsel's arguments regarding the jury's questions.

[8] During the recess outside the presence of the jury, Twiford's trial counsel requested a mistrial based on B.B.'s testimony regarding the possible molestation that had occurred in the trailer at least one year prior to the date range alleged in the charging information. The State objected, and the trial court denied Twiford's motion. Twiford's counsel then asked for a limiting instruction that would instruct the jury that it "may only decide the facts on the dates that are alleged in the charging Information." *Id*. at 129. The court then informed Twiford's counsel that the dates in the information do not control unless the defendant has asserted an alibi defense, which was not the case here.

[9] At that point, the court offered to strike the portion of B.B.'s testimony that related to the events that had allegedly occurred in the trailer. Twiford's counsel agreed, but the State objected and asserted that B.B.'s testimony fell under an exception to Indiana Evidence Rule 404(b), which exception allowed

---

[1] It is not clear when B.B. and her family lived in the trailer. But B.B. testified that they had lived in the trailer while her mother was pregnant with twins, who were five years old on the date of the trial.

evidence of prior bad acts to be admitted if that evidence showed a common plan or scheme. The court reversed its decision and did not strike the testimony. Twiford's counsel then stated that a limiting instruction that informed the jury that it could only use B.B.'s testimony about the incident in the trailer to show a common plan or scheme "would be the only suitable alternative" to striking the testimony. *Id*. Twiford's counsel then specifically requested that the court inform the jury that it could only use the trailer evidence to show a common plan or scheme instead of as substantive evidence of the allegations at issue.

[10] After the jury returned, the court admonished the jury as follows:

> I am hereby admonishing you that you may consider evidence concerning prior sexual contact between the defendant and the alleged victim which occurred at the trailer only insofar as it demonstrates a plan to exploit and sexually abuse the child and not as independent evidence of a separate crime.

*Id*. at 138.

[11] At the conclusion of the evidence, the court entered judgment in favor of Twiford on Count II. The trial court then submitted Counts I and III to the jury. At that time, the trial court provided the final instructions to the jury. Among the instructions was final instruction #13, which provided: "The State is not required to prove that the crime charged was committed . . . on the particular date or during a particular time period as alleged in the information." *Id*. at 200. The jury found Twiford guilty of both Counts I and III, and the trial

court entered judgment of conviction on those counts. Thereafter, the court sentenced Twiford to an aggregate term of forty years in the Department of Correction.

[12] On direct appeal, Twiford argued only that the State did not present sufficient evidence to support his conviction for child molesting, as a Class A felony. *Twiford v. State*, No. 20A04-1205-CR-284, 2013 WL 182745, at *1 (Ind. Ct. App. Jan. 13, 2013). But finding that the evidence was sufficient, this Court affirmed his conviction. *Id.*

[13] On June 30, 2017, Twiford filed an amended petition for post-conviction relief in which he alleged that he had been denied the effective assistance of trial counsel because his trial counsel: failed to object to B.B.'s testimony regarding the possible molestation that had occurred at the trailer, which testimony permitted the jury to draw a forbidden inference of his guilt; requested an admonishment that linked the prior bad act to the allegations at issue; and failed to object to a jury instruction that reinforced the forbidden inference of the prior bad act. Twiford also alleged in his petition that he had been denied the effective assistance of appellate counsel because his appellate counsel had raised only the single issue of sufficiency of the evidence on appeal instead of the admissibility of B.B.'s testimony regarding the prior bad act that had occurred in the trailer. Following an evidentiary hearing at which Twiford's

trial counsel testified,[2] the post-conviction court entered findings of fact and conclusions of law denying Twiford's petition for relief. This appeal ensued.

## Discussion and Decision

[14] Twiford appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

---

[2] Twiford's appellate counsel did not testify at the hearing.

## Issue One: Effectiveness of Trial Counsel

[15] Twiford first contends that he received ineffective assistance from his trial counsel.

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274. The "[f]ailure to satisfy either prong will cause the claim to fail." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). And "most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *Id.*

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002) (citations omitted).

[16] Twiford specifically alleges that his trial counsel committed three errors, namely: his counsel failed to object to B.B.'s testimony regarding the acts that had occurred in the trailer, which testimony Twiford contends allowed the jury to make a forbidden inference of his guilt; his counsel requested a jury admonishment that specifically linked the trailer evidence to the allegations at issue; and his counsel failed to object to a jury instruction that reinforced the forbidden inference of the prior bad act. We address each contention in turn.

*Failure to Object to B.B.'s Testimony*

[17] Twiford first contends that his trial counsel's performance was deficient because counsel did not object to B.B.'s testimony that Twiford had made her "suck on his private part." Trial Tr. at 116. Twiford asserts that his trial counsel should have objected to B.B.'s testimony because that testimony was inadmissible under Indiana Evidence Rule 404(b)(1), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion, the person acted in accordance with the character."

[18] Twiford specifically contends that B.B.'s testimony regarding the act that had occurred while at the trailer was inadmissible evidence of a prior bad act because the alleged incident had occurred over one year prior to the date range alleged in the charging information. He also asserts that the testimony was not admissible as an exception under Evidence Rule 404(b)(2), which allows otherwise inadmissible evidence to be admitted if it demonstrates a common scheme or plan, because his identity was not at issue and because "too great a

span of time had elapsed" between the trailer incident and the incidents in the timeframe alleged. Appellant's Br. at 18.

[19] But we need not decide whether B.B.'s testimony was inadmissible under Indiana Evidence Rule 404(b). Even if Twiford is correct that his trial counsel could have raised a successful contemporaneous objection to B.B.'s testimony, his trial counsel's testimony at the post-conviction hearing establishes that he made a strategic decision not to object. Twiford's trial counsel testified that he generally objects to testimony from a child "more delicately" and "where there's an actual break" in the testimony "so that it doesn't look like I'm jumping up and trying to hide something that would, ultimately, be bad for my client." P-C. Tr. at 13. Twiford's counsel further testified that he did not object to B.B.'s statements at the time she made them but, rather, waited until there was a break in her testimony so that the jury did not view his actions as "bullying" B.B. or otherwise convict Twiford "based on the way [the jury] feel[s] about me or the way that I am bullying a child." *Id.* at 20. Additionally, Twiford's counsel testified that he lodged his objection outside the presence of the jury because objecting in front of the jury is "like re-ringing the bell over and over." *Id.* at 31. Instead of objecting, Twiford's trial counsel took the first opportunity when there was a natural break in B.B.'s testimony to request a

mistrial outside the presence of the jury, which motion the trial court considered but ultimately denied.[3]

[20] Based on Twiford's trial counsel's testimony at the post-conviction hearing, it is clear that Twiford's counsel made a strategic decision not to object to B.B.'s testimony because he was concerned that the jury would disapprove of his actions and impute their dislike of him onto Twiford and because he did not want to "re-ring[]" the bell and highlight B.B.'s testimony to the jury. We cannot say that trial counsel's strategic decision not to object in the presence of the jury but, instead, seek a mistrial outside the presence of the jury was "'so deficient or unreasonable as to fall outside the objective standard of reasonableness.'" *State v. Miller*, 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002) (quoting *Potter v. State*, 684 B.E.2d 1127, 1133 (Ind. 1997)). Accordingly, Twiford has not demonstrated that his trial counsel was ineffective on this issue.

### *Jury Admonishment*

[21] Twiford next contends that his trial counsel was ineffective when his counsel requested that the trial court admonish the jury that it could only consider the evidence of prior sexual conduct between Twiford and B.B. that had occurred at the trailer "only insofar as it demonstrates a plan to exploit and sexually abuse the child and not as independent evidence of a separate crime." Trial Tr.

---

[3] On appeal, Twiford does not suggest that the outcome would have been different had his trial counsel objected to the testimony instead of moving for a mistrial.

at 138. Twiford specifically contends that his counsel's request for that admonishment amounted to ineffective assistance because it improperly linked B.B.'s testimony regarding the act that had occurred at the trailer, which he contends was inadmissible, to the allegations at issue. But, again, even assuming for the sake of argument that Twiford is correct that B.B.'s testimony was inadmissible, we cannot say that his counsel's actions amounted to ineffective assistance of counsel.

[22] Here, the record demonstrates that, after B.B. had testified regarding the acts that had occurred in the trailer, his trial counsel moved for a mistrial because B.B.'s testimony "dealt with . . . possible molestation at a trailer which would have had to be at least . . . a year before the charged dates." Trial Tr. at 126. But, based on an objection by the State, the trial court denied his motion for a mistrial. Twiford's counsel then asked for a limiting instruction that would instruct the jury that they "may only decide the facts on the dates that are alleged in the charging Information." *Id.* at 129. But the court informed Twiford's counsel that the dates in the information do not control unless the defendant has asserted an alibi defense, which was not the case here. Twiford's counsel then agreed to the trial court's proposed solution to strike B.B.'s testimony. But after the State again objected, the trial court decided not to strike the testimony. At that point, Twiford's counsel concluded that the "only suitable alternative" was to ask the court to give a limiting instruction to the jury. Trial Tr. at 136.

[23] The testimony of Twiford's trial counsel at the post-conviction hearing demonstrates that he made a strategic decision to request the admonishment. Indeed, Twiford's counsel testified that, because jurors cannot unhear testimony, he had requested the jury admonishment because "[i]t was as appropriate . . . as I was, potentially, going to get." P-C. Tr. at 34. He further testified that he "had already made [his] objection to, potentially, preserve that issue; and, at that point, a limiting instruction . . . would at least tell the jury that they can't use that as part of . . . the elements of . . . any of those crimes." *Id*.

[24] It is clear that Twiford's trial counsel requested that admonishment because the jury had already heard B.B.'s testimony about acts that had occurred in the trailer, because the trial court had denied his motion for a mistrial, because the trial court had effectively denied his first request for an admonishment instructing the jury that it could only decide the facts on the dates alleged, and because the trial court had declined to strike the portion of B.B.'s testimony regarding the trailer. At that point, Twiford's counsel made a strategic decision to ensure that, at the very least, the jury was informed that it could not use B.B.'s testimony about the events that had allegedly occurred in the trailer to prove the elements of the charged crimes. We cannot say that Twiford's counsel's strategic decision to request that jury admonishment was unreasonable. *See Miller*, 771 N.E.2d at 1288. Twiford has not demonstrated that he was denied the effective assistance of counsel on this issue.

## Failure to Object to Jury Instruction

[25] Twiford further asserts that his trial counsel's performance was ineffective because he failed to object to final jury instruction #13, which provided: "The State is not required to prove that the crime charged was committed . . . on the particular date or during a particular time period as alleged in the Information." Trial Tr. at 200. According to Twiford, the evidence of acts that had occurred in the trailer years at a date prior to the charged offenses "tended to only show the defendant's proclivity to commit the offenses for which he was being charged." Appellant's Br. at 20. And Twiford asserts that, "[b]y allowing this Instruction, the State was able to neutralize the years between the undiscovered disclosure and the charged offenses and circumvent the Rules of Evidence." *Id.* at 20-21.

[26] But we need not determine whether Twiford's trial counsel's failure to object to that jury instruction amounted to deficient performance because Twiford has not shown that, but for his counsel's failure to object, there is a reasonable probability that the result of his trial would have been different. At trial, B.B. testified to numerous incidents that had occurred while Twiford was staying with them between June and September 2009. Indeed, B.B. testified that Twiford had touched her "private" area where she "go[es] potty." Trial Tr. at 102. B.B. also testified that Twiford had "tried to put his private part" in hers more than five times. *Id.* at 104. Additionally, B.B. testified that, on one occasion, Twiford took her clothes off and "tried to have S-E-X" with her. *Id.* at 106. Further, B.B. testified that Twiford had touched her private part with

his hand "like ten times." *Id*. at 108. B.B. also testified that Twiford had "made [her] shake his private part." *Id*. And B.B. testified that Twiford had put "[w]hite, clear stuff" into her "bottom." *Id*. at 139. In all, B.B. testified that Twiford had touched her "twenty times." *Id*. at 113.

[27] Based on the totality of the evidence in this case, we cannot conclude that B.B.'s testimony about the act that had occurred in the trailer prejudiced Twiford to the extent that the outcome of his trial would have been different had his trial counsel objected to final instruction #13 and had the jury not been instructed that the State was not required to prove that the crime charged was committed on the particular date as alleged in the information. *See Bradford v. State*, 988 N.E.2d 1192, 1205 (Ind. Ct. App. 2013) (holding that, under the circumstances of all of the evidence presented in the case, the Court could not conclude that the outcome would have been different had the defendant's counsel objected to the final instruction at issue and had the jury not been told that it could consider prior inconsistent statements as substantive evidence). Stated another way, Twiford has not demonstrated that the jury would not have convicted him even if it had been instructed not to consider B.B.'s testimony about acts that had occurred in the trailer. Twiford has not demonstrated that he received ineffective assistance of counsel on this issue.

### Issue Two: Effectiveness of Appellate Counsel

[28] Twiford also contends that he was denied the effective assistance of his appellate counsel. "We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective

assistance of trial counsel." *Montgomery v. State*, 21 N.E.3d 846, 854 (Ind. Ct. App. 2014). "[T]o prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance." *Id*. at 853. "Failure to satisfy either prong will cause the claim to fail." *Id*. at 854.

[29] Ineffective assistance of counsel claims generally fall into three categories: 1) denial of access to an appeal; 2) waiver of issues; and 3) failure to present issues well. *Hollowell v. State*, 19 N.E.3d 263, 270 (Ind. 2014). Here, Twiford asserts that his appellate counsel failed to raise an issue on direct appeal that was clearly stronger than the one sufficiency issue she did raise. When evaluating a claim than an appellate attorney should have raised certain issues on appeal, we must determine "whether an unraised issue was significant and obvious from the face of the record" and "whether the unraised issue was 'clearly stronger' than the raised issue or issues." *Graham v. State*, 941 N.E.2d 1091, 1099 (Ind. Ct. App. 2011) (quoting *Fisher v. State*, 810 N.E.2d 674, 676 (Ind. 2004)).

[30] Counsel is very rarely found to be ineffective when the issue is failure to raise a claim on direct appeal. *See Montgomery*, 21 N.E.3d at 854. That is because "'the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.'" *Id*. (quoting *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)). Accordingly, "'reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable.'" *Id*. (quoting *Bieghler*, 690 N.E.2d at 193-94).

[31] Here, Twiford contends that his appellate counsel's performance was deficient because she failed to raise on direct appeal the "forbidden inference" of his guilt that Twiford alleges the jury was allowed to make from B.B.'s disclosure about the prior bad act that had occurred in the trailer. Appellant's Br. at 26. In essence, Twiford contends that his appellate counsel should have argued on direct appeal that the trial court abused its discretion under Evidence Rule 404(b) when it admitted B.B.'s testimony. And Twiford contends that the issue of the admissibility of B.B.'s testimony was clearly stronger than the sufficiency of the evidence issue. Appellee's Br. at 26.

[32] However, to succeed on his ineffective assistance of counsel claim, "the prejudice prong of *Strickland* requires [Twiford] to demonstrate a reasonable probability that, but for his counsel's errors, the result of his direct appeal would have been different." *Martin v. State*, 760 N.E.2d 597, 600 (Ind. 2002). Accordingly, to show prejudice regarding appellate counsel's failure to raise the admissibility of B.B.'s testimony, Twiford is required to show that this Court would have reversed his convictions had his appellate counsel raised that issue on appeal.

[33] But Twiford has not shown that there is a reasonable probability that the result of his direct appeal would have been different had his appellate counsel raised the issue of the admissibility of B.B.'s testimony. It is well settled that "[e]rrors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). "To determine whether an error in the

introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury." *Id.*

[34] Here, even if we had held that the trial court abused its discretion when it admitted B.B.'s testimony, we would have concluded that any error in that admission was harmless. As discussed above, B.B. testified at trial to numerous incidents that had occurred while Twiford was staying in the same house as B.B. from June to September 2009. Indeed, B.B. testified that Twiford had touched her in her "private area." Trial Tr. at 102. She further testified that Twiford had "tried to put his private part" in hers more than five times. *Id.* at 104. Additionally, B.B. testified that Twiford "tried to have S-E-X" wither her. *Id.* at 106. B.B. also testified that Twiford had "made [her] shake his private part." *Id.* And B.B. testified that Twiford had put "[w]hite, clear stuff" into her "bottom." *Id.* at 139. In all, B.B. testified that Twiford had touched her "twenty times." *Id.* at 113. Based on that testimony, we cannot say that B.B.'s one statement—which, based on a jury admonishment, was not even admitted as substantive evidence—regarding an act that had occurred prior to the date range alleged in the charging information had a probable impact on the jury.

[35] Because any error in the admission of B.B.'s statement was harmless, Twiford has not demonstrated a reasonable probability that the result of his direct appeal would have been different had his appellate counsel raised the issue of the admissibly of B.B.'s testimony rather than the sufficiency of the evidence. *See Martin*, 760 N.E.2d at 600. As such, Twiford has not demonstrated that he was denied the effective assistance of appellate counsel.

## *Conclusion*

[36] In sum, we affirm the post-conviction court's denial of Twiford's petition for post-conviction relief.

[37] Affirmed.

Pyle, J., and Altice, J., concur.